**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

SintecMedia, Inc.,                                         :

                 Plaintiff,                       :

       -against-                                     :

Televisa, S.A. de C.V.,                               :

               Defendant.                    :

------------------------------------------------------ X

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff SintecMedia, Inc. ("SintecMedia"), for its Complaint against Televisa, S.A. de C.V. ("Televisa"), alleges as follows:

<strong>NATURE OF THE ACTION</strong>

1. This action seeks to recover millions of dollars in damages as a result of Televisa's breaches and unlawful termination of its agreement with SintecMedia for a customized television advertising management software system after nine years of substantial investment by SintecMedia and just as the project was on the verge of full implementation.

2. In April 2008, SintecMedia and Televisa entered into a Software License and Maintenance Agreement (the "Agreement"), pursuant to which SintecMedia agreed to license its *OnAir* software to Televisa, customize and implement the software to meet Televisa's specific needs for traffic and billing management, and provide the necessary maintenance for a five-year initial contract period, for license and project fees of $6,298,000 plus millions of dollars in additional annual maintenance fee payments to commence upon "Go Live." (Go Live refers to the time when the software moves beyond testing and goes live for users.)

3. Effective July 2, 2010, SintecMedia and Televisa entered into the Second Addendum to the Software License and Maintenance Agreement ("Second Addendum"), adding

a sales management scope to the project and changing the conditions of the payments for the Project Fees to SintecMedia.

4.      Effective August 4, 2011, SintecMedia and Televisa entered into a Third Addendum to the Software License and Maintenance Agreement Between Televisa Networks Group, Inc. and SintecMedia, Inc. ("Third Addendum"), pursuant to which the parties increased the scope of work to be performed by SintecMedia and further changed the conditions of the payments to SintecMedia for the remaining Project Fees.

5.      Subsequent to the Third Addendum, Televisa continued to expand the scope of work to be performed by SintecMedia leading to additional costs and fees.

6.      Delivering Televisa a customized *OnAir* system required SintecMedia to expend significant amounts of time and effort on the design, development, and implementation of the software.  It also required Televisa's direct and deep participation in every aspect of the process.

7.      Televisa warranted and agreed that it had all reasonable means and resources, including without limitation manpower resources, needed for the full and complete installation, implementation, and operation of the *OnAir* system in accordance with the agreed implementation plan, and that it would fully cooperate in good faith and in a timely and professionally manner with all reasonable requests made by SintecMedia.

8.      It became clear that Televisa did not have the reasonable means and resources. Televisa was not prepared or staffed with skilled personnel, particularly in the area of information technology, to make the investment of time and effort that was required.  Televisa attempted to fill this gap by contracting with third-party system integrators to work with SintecMedia to implement the project. But Televisa repeatedly changed system integrators

2

during the life of the project, each time creating disruptions that substantially delayed the project and increased SintecMedia's costs.

9.      Meanwhile, instead of cooperating in good faith and in a timely and professional manner as required by the Agreement, Televisa hindered and delayed contract performance by, among other things: repeatedly expanding and otherwise changing the project scope; failing to provide information, documentation, and other resources necessary in the performance of the Agreement; failing to make payments in accordance with the Agreement; failing to cooperate in the performance of the Agreement; unreasonably insisting on unnecessary and un-bargained for Change Requests; failing to timely test the system; and, belatedly—after acceptance and Go Live—raising purported issues with the *OnAir* system that directly contradicted the positive reports from Televisa's actual users, and then denying SintecMedia access to evaluate and address these alleged issues.

10.     Despite these obstacles, SintecMedia's substantial investment of time and effort led to positive results.  In August 2016, the *OnAir* system successfully went live for Televisa's Guadalajara and Monterrey networks.  SintecMedia received consistently positive feedback from the Televisa *OnAir* system users.

11.     In light of the successful Go Live with Guadalajara and Monterrey and successful testing of the *OnAir* system for Televisa's national networks, in December 2016, SintecMedia recommended that the national networks also go live.  In conversations between the parties in December 2016 and then again in January 2017, Televisa made clear that it intended to complete the implementation of the full system during 2017, and even requested that SintecMedia develop dozens of additional enhancements, which were not part of the original project scope, to support

Televisa's Pay TV business.  Relying in good faith on Televisa's representations, SintecMedia began working on those additional enhancements.

12.     Notwithstanding:

- SintecMedia's substantial efforts and investments over the life of the project;

- the delays Televisa caused by its lack of skilled personnel, Televisa's repeated demands to expand and change project scope, and revolving door of system integrators;

- the successful roll-out of the Guadalajara and Monterrey networks;

- Televisa's acceptance of the system;

- the consistently positive feedback from Televisa's users;

- SintecMedia standing ready to go live with the Televisa's national networks,

- Televisa's express representations in late 2016 and early 2017 that it intended to move forward with completing implementation in 2017; and

- Televisa's late 2016 request for even more software enhancements that further expanded the project scope,

Televisa, in April 2017, claimed that the SintecMedia *OnAir* system had issues that SintecMedia had to cure within fifteen (15) days or SintecMedia would terminate the Agreement.

13.     These alleged issues were a transparent ploy to back out of the Agreement.  In early 2017, Televisa changed management and was undergoing an internal reorganization due to its partnership with Univision.  The new management apparently reevaluated its needs and was not committed to the past management's decision to implement an *OnAir* system.  With the impending rollout of the *OnAir* system to all remaining networks in 2017 set to trigger project milestone, license and maintenance payments due to SintecMedia, Televisa decided to terminate

the Agreement.  Knowing that the Agreement does not allow for termination without cause, Televisa's only recourse was to manufacture issues in an improper attempt to terminate for cause.

14.     But these purported issues were directly contrary to the feedback SintecMedia had been receiving from Televisa's actual users and the representations from Televisa's management in December 2016 and until March 2017.  And when SintecMedia attempted to investigate and address the purported issues, Televisa denied SintecMedia access to the system, instructed its users not to talk to SintecMedia's support team, and rejected SintecMedia's repeated requests that Televisa allow SintecMedia's Chief Technology Officer to visit Televisa to discuss and address the alleged issues.  Televisa's knowing and deliberate obstruction was a willful violation of the cooperation clause.

15.     Then on May 8, 2017, notwithstanding SintecMedia's significant investment and the advanced stage of the project, Televisa's Legal Representative, Armando Javier Martinez Benítez, informed SintecMedia that Televisa was unilaterally terminating the Agreement. Televisa improperly claimed that SintecMedia had breached the Agreement by "fail[ing] to comply with its obligations under the Agreement and to cure or remedy the breaches."  In doing so, Televisa itself willfully and deliberately violated the terms of and materially breached the Agreement.

16.     Televisa's unilateral, willful, and unlawful termination of the Agreement has deprived SintecMedia of the benefit of its bargain, that is, the millions of dollars in additional fees that SintecMedia expected to receive over the life of the Agreement as compensation for the nearly nine-year investment of substantial time and money in this project.

**PARTIES**

17.     SintecMedia is a Delaware corporation registered and authorized to conduct

business in New York, with its principal place of business at 6 East 32nd Street, New York, New

York 10016.

18.     Televisa is a Mexican corporation registered and authorized to conduct business

in the United Mexican States, with its principal office at Av. Vasco de Quiroga No. 2000,

Colonia Zedec Santa Fe, 01210, Mexico City, Mexico.

**JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

§ 1332(a) because SintecMedia alleges damages in excess of $75,000 and the parties are citizens

of a state and of a foreign state.  For purposes of diversity jurisdiction, SintecMedia is a citizen

of New York and Delaware, and Televisa is a citizen of Mexico.

20.     This Court has personal jurisdiction over Televisa pursuant to CPLR §§ 301 and

302 because Televisa transacted business in New York by entering into a long-term contractual

relationship with SintecMedia, a New York resident.

21.     This Court also has personal jurisdiction over Televisa because it consented to the

jurisdiction of New York to govern the contractual disputes at issue in this action pursuant to

Section 9 of the Agreement.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3) because Televisa

is not resident in the United States.

23.     Venue is also proper in this Court because Televisa consented to venue in

Manhattan to resolve the contractual disputes at issue in this action pursuant to Section 9 of the

Agreement.

6

FACTUAL ALLEGATIONS

**SintecMedia's Management Services**

24.     SintecMedia, which is now known and conducting business as Operative, is a leader in innovative technology.  SintecMedia has developed and created a number of Software as a Service products, located on-premise or centrally-hosted on remote servers (in the cloud), that help users streamline the entire process of broadcasting.  SintecMedia's products allow users to efficiently manage the buying and selling of TV & digital advertising space—from creating, selling, and delivering products to billing clients and reporting.

25.     Among other products, SintecMedia created and developed a fully-integrated end-to-end advertising business management solution, *OnAir*, that provides TV publishers and networks with a software platform to more efficiently run their advertising business.

26.     *OnAir* is designed to be a customized product and as such, SintecMedia develops close-knit relationships with its *OnAir* clients and works to understand their business and customize complex systems to meet specific client needs.  SintecMedia has successfully rolled-out its *OnAir* products with, among others, NBC Broadcast and Cable networks.

**Televisa Selects SintecMedia to Provide Software and Services for Televisa**

27.     In 2008, SintecMedia and Televisa negotiated an agreement for SintecMedia to provide Televisa its *OnAir* system.  This system would manage Televisa's advertising traffic, billing, and stewardship reporting operations across Televisa's networks.  SintecMedia's proposed solution would also manage Televisa's broadcast scheduling needs.

28.     Because of the sophistication of SintecMedia's *OnAir* system, and the high level of customization it offers to each of its clients, SintecMedia places a high premium on client commitment to its *OnAir* implementation projects, and the Televisa project was no exception.

7

Televisa understood that this was an integral part of the project, as Televisa knew SintecMedia's *OnAir* system was going to be customized specifically for Televisa.

**The Software License and Support Agreement**

29.     On April 10, 2008, SintecMedia and Televisa entered into the Agreement, pursuant to which SintecMedia agreed to license the *OnAir* system to Televisa for a five-year initial period after the software was implemented.  In addition to the software license, SintecMedia agreed to develop, customize, service, and support an *OnAir* broadcast management system for Televisa, and agreed to provide the necessary maintenance and support for its software.

30.     SintecMedia and Televisa intended that their relationship would be a partnership in the development of a unique system that would allow Televisa to meet its specific management goals.  SintecMedia made clear, from the outset of this project, that the *OnAir* system would not be an "off the shelf" product and that the success of the project would hinge on Televisa's willingness to work with SintecMedia to develop a customized system that was much more advanced than Televisa's existing systems.  It was going to be a complex project— particularly given the level of customization Televisa desired—and would require substantial commitment from Televisa.

31.     Accordingly, Televisa warranted and agreed that it had all reasonable means and resources, including without limitation manpower resources, needed for the full and complete installation, implementation and operation of the *OnAir* system in accordance with the agreed implementation plan, and that it would fully cooperate, in good faith and in a timely and professionally manner, with all reasonable requests made by SintecMedia.

32.     The project was initially divided into three phases.  Phase 1 involved work for the National Broadcast network ("National") and was to be completed first.  Phase 1 was scheduled to be completed in November 2008.  Phase 2 involved work for the Pay Television networks ("Pay TV") and was to be completed after Phase 1.  Phase 2 was scheduled to be completed in April 2009.  Phase 3 involved work for the Local Broadcast Television networks ("Regional") and was to be completed after Phase 2.  Phase 3 was scheduled to be completed around October 2010.

33.     The monetary compensation for SintecMedia's development, implementation, and service of Televisa's *OnAir* Traffic and Billing system was a fixed amount that contained three primary components:  (i) the license fee for the software ("License Fees"); (ii) the Professional Services Project Fees, customization fees, and user training and support fees ("Project Fees"); and (iii) maintenance and support fees ("Maintenance Fees").

34.     Pursuant to the initial Agreement, SintecMedia charged Televisa a fixed fee of $6,298,000 (the License Fees and Project Fees) for the software configuration, implementation, and testing, payable in installments upon the completion of certain milestones.  The License Fees were discounted from $4,408,000 to $4,288,000.

35.     Specifically, Televisa agreed to the following implementation milestones and milestone payments in the initial Agreement for the License Fees:

| Milestone | Services (US $) |
|---|---|
| Televisa National Network – 30% | 633,000 |
| Televisa National Networks and Pay TV 30% | 174,000 |
| Payment shall be made at the execution date of the Agreement | 807,000 |

| | |
|---|---|
| Televisa National Networks 20% payment | 422,000 |
| Televisa National Networks and Pay TV 20% payment shall be made once the Software is installed and approved in writing by Televisa in accordance with the Agreement | 116,000 <br><br> 538,000 |
| Once Final Acceptance is given in writing by Televisa for Televisa's National Networks plus delivery of Customization Tools. The remainder 50% shall be made complying with requirements of the Agreement | 1,055,000 |
| Once Pay Channels Go Live, payment will be done when first transmission is broadcasted by Televisa | 290,000 |
| Local Stations Go Live | 1,458,000 |
| Payment of the Interfaces shall be done as they're delivered by SintecMedia and accepted | 140,000 |
| **Total** | **4,288,000** |

36.     Televisa also specifically agreed to the following implementation milestones and milestone payments in the initial Agreement for the Project Fees:

| Milestone | Services (US $) |
|---|---|
| Project Begins, when the Implementation Plan is approved in writing by Televisa | 300,000 |
| Functional Design Approvals, when the Functional Design is approved in writing by Televisa | 200,000 |
| 1st Development Software Drop, once it is approved in writing by Televisa | 200,000 |
| Software Installment as provided in the Agreement | 200,000 |
| Final Acceptance National Networks - Go Live ** Maintenance Begins <br> If Final Acceptance is given by Televisa - and Televisa National Networks Go live occurs in the year in course (2008), the amount will be paid on January 2009 in accordance with the Agreement. In the event such acceptance occurs in 2009, Televisa will pay in the terms provided in the Agreement. | 500,000 |
| Once Televisa accepts in writing the National Networks, Pay TV, Guadalajara, and Monterrey - Go Live Project Bonus | 160,200 |
| Once Televisa accepts in writing the Final Acceptance - Go Live Pay Channels | 200,000 |
| Once Televisa accepts in writing the Final Acceptance - Go Live Local Channels - Monterrey, Guadalajara, Veracruz | 249,800 |
| **Total** | **2,010,000** |

37.     The fixed fees SintecMedia charged for the implementation phase were deeply discounted, as the agreed-upon fees were far less than the actual costs SintecMedia expected to incur (and actually did incur) for this work.  Televisa was aware that SintecMedia provided a deep discount on implementation and licensing costs in exchange for the establishment of a strategic partnership to develop this software and for the lucrative continuing maintenance and support relationship detailed in Annex IV to the Agreement.

38.     SintecMedia also provided Televisa with a maintenance and support plan for which Televisa agreed to pay an annual maintenance fee amounting to 20% of the total License cost and customization for the first two years upon initial Go Live, and an agreed percentage not less than 18% for the following years.

39.     In order to allow Televisa to utilize SintecMedia's Software, SintecMedia granted Televisa a limited, world-wide, royalty-free, non-exclusive, non-transferable license to use the Software ("License"), subject to the terms of the Agreement, including full payment of license fees, project fees, and annual maintenance fees.

40.     With respect to delivery and acceptance of the software by Televisa, Section 2.5 of the Agreement provided that:

> A person to be designated as a representative by Televisa in writing, shall have a 45 (forty five) day period (the **Acceptance Period**") from the date of installation of the Software, to ensure that the Software is operating in accordance with the specifications detailed in ***Annex I*** of this Agreement ("**Acceptance**").

Section 2.6 of the Agreement also provided that:

> The Software would be deemed accepted  by Televisa, upon the earlier of:
>
> a)     The issuance of the Acceptance, in writing, by Televisa's representative in accordance with Section 2.5, or
> b)     after the conclusion of the Acceptance Period, unless the Software was found to materially deviate from the specifications in ***Annex I*** of this

> Agreement, and such deviation was specified in writing by Televisa's representative during the Acceptance Period, or

c)      Upon Televisa's first use of the Software for 'Go-Live' (as defined below), as defined herein. . . .

Televisa further agreed in Section 2.7 that:

> Acceptance of the Software shall not be withheld by Televisa on any grounds other than those relating to material deviations from the Specifications expressly detailed in *Annex I* of this Agreement.  Non-material deviations from the agreed Specifications shall not be grounds for Televisa to refuse to provide Acceptance of the Software.  For purposes of this Agreement Errors (as defined in the Service Level Agreement attached hereto as *Annex IV* (the "**SLA**")), which reasonably permit Televisa to commence and continue the use of the Software (without prejudice to SintecMedia's obligation to repair such Errors under the terms of the maintenance and support sections of this Agreement), shall be considered non-material deviations for the purpose of this Section 2.7.

41.      From June 2008 through January 2009, SintecMedia worked closely with Televisa's third-party system integrator Accenture, which Televisa had engaged to develop Televisa's system requirements and compare those requirements against the *OnAir* system.  By February 2009, Televisa and Accenture developed a list of more than 1,000 requirements for the *OnAir* system.  This substantially expanded the scope of the project and delayed implementation.

42.      Around February 2009, Accenture stopped working on the project.  SintecMedia then worked directly with Televisa to begin designing system enhancements to meet the requirements prepared by Accenture.  But while SintecMedia was progressing on the design work, Televisa decided to expand the scope of the project again by requesting that SintecMedia customize the sales management functionality of the *OnAir* software.

43.      Around October 2009 Televisa hired a third-party, Galaz, Yamazaki, Ruiz Urquiza, S.C. ("Deloitte") to handle system integration, including identifying sales management requirements, gap analysis between those requirements and the OnAir software, and functional design development.

**Second Addendum to Software License and Maintenance Agreement**

44.    In the summer of 2010, the parties negotiated an amendment to the Agreement

that altered SintecMedia's scope of work and added work with Deloitte.  Effective July 2, 2010,

SintecMedia and Televisa entered into the Second Addendum.  Televisa agreed to pay $441,493

for work SintecMedia would provide to Deloitte.  The Second Addendum further made changes

to the conditions of the payments that Televisa had to make to SintecMedia, altering the Project

Fees Payment Schedule contained in Annex II of the Agreement.  Specifically, the Project Fees

were changed to the following:

| Milestone | Services (US $) |
|---|---|
| Project Begins, when the Implementation Plan is approved in writing by Televisa | 300,000 |
| Deloitte's Plan (Detailed Design) | 441,493 |
| Functional Design Approvals, when the Functional Design is approved in writing by Televisa | 100,000 |
| 1st Development Software Drop, once it is approved in writing in Televisa | 100,000 |
| Software Installment as provided in the Agreement | 100,000 |
| Final Acceptance National Networks - Go Live ** Maintenance Begins If Final Acceptance is given by Televisa - and Televisa National Networks Go live occurs in the year in course (2008), the amount will be paid on January 2009 in accordance with the Agreement. In the event such acceptance occurs in 2009, Televisa will pay in the terms provided in the Agreement. | 550,000 |
| Once Televisa accepts in writing the National Networks, Pay TV, Guadalajara, and Monterrey - Go Live Project Bonus | 118,507 |
| Once Televisa accepts in writing the Final Acceptance - Go Live Pay Channels | 150,000 |
| Once Televisa accepts in writing the Final Acceptance - Go Live Local Channels - Monterrey, Guadalajara, Veracruz | 150,800 |
| **Total** | **2,010,000** |

**Third Addendum to Software License and Maintenance Agreement**

45.     In the spring of 2011, Televisa changed system integrators again, moving from Deloitte to Protiviti Consulting Management.  This further disrupted and delayed implementation.

46.     In 2011, the parties sought to increase the scope of work to be performed by SintecMedia and again sought to make changes to the conditions of the payments that Televisa had to make to SintecMedia.  Effective August 4, 2011, SintecMedia and Televisa entered into the Third Addendum that adopted a new Project Fees Payment Schedule, which set Project Fees for work through May 15, 2013 at $3,797,071.

47.     Televisa agreed to the following implementation milestones and payment schedule for the Project Fees:

| Milestone | Services (US $) | Payment Date |
|---|---|---|
| Balanced (Project fees) | 230,000 | 8/15/2011 |
| Consulting Services Provided | 240,000 | 8/15/2011 |
| Functional Design Approvals, when the Functional Design is approved in writing by Televisa, consisting of 13 (thirteen) documents | 190,000 | 10/31/2011 |
| Last Set of Functional Design Documents Approvals, consisting of 39 (thirty nine) documents | 160,000 | 2/15/2012 |
| 1st Development Software Drop, consisting of 20 (twenty) development | 160,000 | 4/1/2012 |
| Consulting Services Provided, consisting of 17 (seventeen) functional Designs | 240,000 | 6/1/2012 |
| Software Installment as provided in the Agreement, consisting of 40 (forty) developments | 160,000 | 8/1/2012 |
| Consulting Services Provided, consisting of 16 (sixteen) developments | 160,000 | 10/1/2012 |
| Previous Final acceptance, First National System Testing with all components (without Optimizer) | 170,000 | 1/31/2013 |

| | | |
|---|---|---|
| Final Acceptance National Networks - Go Live, which consists in the software in production with full functionality (without Optimizer)<br><br>** Maintenance Begins<br><br>If Final Acceptance is given by Televisa - and Televisa National Networks Go live occurs in the year in course (2008), the amount will be paid on January 2009 in accordance with the Agreement. In the event such acceptance occurs in 2009, Televisa will pay in the terms provided in the Agreement. | 618,564 | 4/15/2013 |
| Once Televisa accepts in writing the National Networks, Pay TV, Guadalajara, and Monterrey - Go Live Project Bonus | 118,507 | TBD |
| Once Televisa accepts in writing the Final Acceptance - Go Live Pay Channels | 150,000 | TBD |
| Once Televisa accepts in writing the Final Acceptance - Go Live Local Channels - Monterrey, Guadalajara, Veracruz | 150,000 | TBD |
| **Subtotal** | **2,747,071** | |
| Optimizer Consulting Services Provided (Agree Prototype Scope document (TVSA<==>SINTEC)) | $250,000 | 9/30/2011 |
| Review & Approval FD Document Optimizer Engine/Prototype (TVSA) | $250,000 | 11/30/2011 |
| Development Optimizer Engine | $200,000 | 12/1/2012 |
| Optimizer Installation | $350,000 | 5/15/2013 |
| **Subtotal** | **1,050,000** | |

48.   With the License, SintecMedia also provided Televisa with a maintenance and support plan, in which Televisa agreed to pay an annual fixed fee after Go Live for the National Networks, calculated based on the "Total Cost column plus Customization Costs . . . multiplied by 20% in the first two years (24/7 support) and on the following years by an agreed percentage . . . [which] will not be less than 18%."

49.   The Total Cost was the amount in the Agreement "without discount of the Final Negotiated Pricing." At that time, the base amount for the determining Maintenance Fees approximated $6 million.

50.     In addition to the scope of work specified in the Agreement and the Addendums, Televisa has also requested that SintecMedia perform additional work, including developing hundreds of Change Requests, that further impacted and extended the project's timeline.  The scope of the work expanded considerably due to Televisa's requests, requiring SintecMedia to devote substantial additional man hours to the project, including project management and support services.

**Go Live for Guadalajara and Monterrey**

51.     SintecMedia made extraordinary efforts to continue to work together with Televisa to develop and implement *OnAir* programming solutions, as well as to resolve the non-material issues that arose in the course of this large and complex project.  SintecMedia continued to manage the project and develop customizations for Televisa's *OnAir* system at Televisa's request.  In sum, at Televisa's insistence and with its full acquiescence, SintecMedia continued to invest significant time and resources in developing Televisa's system.

52.     Subsequent to the third addendum to the Software and License Agreement and after SintecMedia made substantial progress toward implementing the *OnAir* system, Televisa once again made a decision that expanded the scope and increased the project.  Televisa decided to change its business operations, and instead of having separate National, Pay TV, and Regional sales management systems, Televisa wanted SintecMedia to develop a multi-platform system. This change required additional requirements analysis and design and development work.

53.     Notwithstanding this significant change, Televisa decided that while SintecMedia began work on this new multiplatform system, Televisa still wanted SintecMedia to proceed to go live with its Guadalajara and Monterrey networks.

54.     The hard work and significant investment of time and resources by SintecMedia led to successful results.  By August 2016, SintecMedia was ready to Go Live for the Guadalajara and Monterrey networks, and on August 15, 2016, those networks went to Go Live.  Thus, Televisa accepted the software by no later than the Go Live date of August 15, 2016.

55.     In parallel to the Go Live of the Guadalajara and Monterrey regional networks, SintecMedia was also preparing for the National Networks to Go Live in Q1 2017, as requested by Televisa.  Indeed, SintecMedia's development work and testing for the National Networks piece had been completed by August 2015.  The only remaining step to go live with National Networks was for Televisa to complete its testing.

56.     On December 14, 2016 in Mexico City, Amir Lavi and Chanan Weiss (at that time the SintecMedia President) of SintecMedia met with Maximiliano Arteaga of Televisa to discuss the project.  At that meeting, Televisa stressed that they needed to complete the *OnAir* project in the coming year, and SintecMedia asserted that they would be able to do so.  Televisa also indicated that it would be retaining Tech Mahindra to support the full implementation as system integrator.

57.     During the same meeting, Televisa requested that SintecMedia progress nearly one hundred Change Requests for Pay TV & Multiplatform Enhancements and Interfaces.  SintecMedia informed Televisa that the cost of this additional work above the project scope to be more than $1.2 million, but also indicated it would provide Televisa with a 5% discount.  Thus, Televisa knew that SintecMedia expected to be paid for this work.

58.     SintecMedia relied in good faith on Televisa's representations that it wanted SintecMedia to progress these changes, and thus began devoting substantial time and effort toward the changes.  SintecMedia completed dozens of these Change Requests and made

substantial progress on others.  Under the Agreement, Televisa was to compensate SintecMedia

for its time and materials performing this work.

59.     Televisa reiterated its intention and its request for a further expanded project

scope in several conversations held between Mr. Lavi and Mr. Arteaga during December 2016

and January 2017.

60.     At no point before or during the parties' December 2016 meeting or subsequent

conversations in December 2016 and January 2017, did Televisa suggest that SintecMedia was in

breach of the Agreement.

61.     Following SintecMedia's December 2016 recommendation to go live with

National Networks, which would have resulted in substantial additional payments to

SintecMedia, Televisa's management suddenly claimed that there were outstanding issues with

the *OnAir* software.  Under the circumstances, it appears Televisa created these issues to create a

basis for terminating the agreement.

62.     During this time, Televisa had changed management and was undergoing an

internal reorganization due to its partnership with Univision.  It appears that Televisa's merger of

its production and development operations with Univision resulted in Televisa reevaluating its

needs.  Televisa's apparent shifting corporate priorities and new organizational constructs and

management resulted in Televisa deciding it wanted to terminate the Agreement.  Indeed, during

a February 2017 meeting between the parties, Televisa representatives explained that the

business was in the process of changing its ad sales strategy.

63.     Knowing that the Agreement does not allow for termination without cause,

Televisa attempted to avoid its contractual obligations by manufacturing issues and then

preventing SintecMedia from investigating those issues.

64.     For example, Televisa denied SintecMedia remote access to Televisa's production server and onsite access in Monterrey and Guadalajara.  Televisa also instructed its users of the system not to respond to SintecMedia support staff.  These and other deliberate and willful acts prevented SintecMedia from providing support and assessing SintecMedia's newly alleged performance issues.

65.     On February 14, 2017, Amir Lavi, Elad Lustig, Maximiliano Arteaga, and counsel for Televisa met in Mexico City for a management meeting.  At the meeting, SintecMedia presented its plan for addressing the newly alleged performance issues raised by Televisa.  To help investigate and address these purported issues, SintecMedia proposed sending their Chief Technology Officer, Michael Nemoy, and their head of DBA team, Michael Showman, to Mexico City and to the relevant regions for on-site support.

66.     Televisa, however, subsequently informed SintecMedia that as a result in changes in its business plans, Televisa was looking at other options.  In follow-up correspondence to the management meeting on February 18, 2017 Maximiliano Arteaga informed SintecMedia that it should not send Michael Nemoy to Mexico.  Televisa further noted that rather than go through the formal escalation process provided for in the Agreement to resolve any purported issues with the SintecMedia software, and despite the years of work SintecMedia had performed under the Agreement, Televisa was going to abandon the project and start with a new Request for Proposal.  Through April 2017, SintecMedia repeatedly attempted to meet with Televisa and repeatedly offered to Televisa for SintecMedia's CTO Michael Nemoy to travel to Mexico City and personally address any remaining issues, yet Televisa repeatedly denied those requests.

**Televisa Unilaterally and Unlawfully Terminates the Agreement**

67.     On April 7, 2017, after SintecMedia had indicated that Televisa would be obligated to pay SintecMedia the remaining fees under the Agreement should Televisa abandon the project, Televisa's Legal Representative Armando Javier Martinez Benitez, sent a letter to SintecMedia purporting, for the first time, to assert breaches of the Agreement.  Mr. Benitez stated that:  SintecMedia failed to implement the National networks software; there were functionality issues with the Guadalajara and Monterrey networks; only a small amount of local channels were installed; there were purported issues with concurrent users; SintecMedia's workarounds were insufficient; and SintecMedia failed to adequately resolve errors pursuant to Annex IV of the Agreement.  Televisa asserted that, pursuant to Section 8.3.2 of the agreement, SintecMedia had fifteen (15) days to cure the purported breaches, setting a deadline of May 3, 2017.

68.     On April 18, 2017, SintecMedia's General Legal Counsel, Elad Lustig, denied the purported breaches raised in the letter, and reminded Televisa of its numerous failings during the course of the project, as discussed above.  To move the project forward, however, SintecMedia proposed a top management meeting.

69.      On April 30, 2017, Mr. Benítez responded to the letter from Mr. Lustig, and rather than try to move the project forward with a top management meeting, instead asked whether the parties could meet to discuss how to end the relationship.  Mr. Benítez further stated that Televisa was prepared to issue a letter of termination unless SintecMedia could cure all of the purported breaches by May 3, 2017.

70.     On May 5, 2017, Amir Lavi responded to the letter and again requested that Televisa permit SintecMedia's experts to work on-site to resolve any purported issues and

provide support.  Mr. Lavi further noted that Televisa's users were reporting that they had been instructed by Televisa not to reply to SintecMedia's support team, thus preventing SintecMedia from providing any support to Televisa, even though Televisa had requested such support.

71.     By letter dated May 8, 2017 to SintecMedia, Televisa unilaterally and without justification terminated the Agreement ("Termination Letter").  Televisa stated that "SintecMedia has failed to comply with its obligations under the Agreement and to cure or remedy the breaches set forth in the Notice."

72.     By letter dated May 9, 2017 to Televisa, SintecMedia formally responded to Televisa's Termination Letter and rejected Televisa's improper attempt to unilaterally terminate the Agreement, including by Televisa's own breach of the Agreement through "non-payment of due fees, lack of cooperation, acting in bad faith, not applying the means and resources needed for the full implementation of the system[,] and other material breaches," and also Televisa's refusal to allow SintecMedia to "cure" any purported breaches.  Further, SintecMedia also noted that Televisa should cease any use of the software pursuant to Section 8.3.3 of the Agreement.

**SintecMedia Has Sustained Substantial Damages as a Result of Televisa's Wrongful Termination and Breaches of the Agreement**

73.     When Televisa elected to unilaterally, willfully, and wrongfully terminate the Agreement, thus breaching the Agreement, it caused SintecMedia substantial damage. SintecMedia invested substantial resources over a nine-year period  into the project with the expectation that Televisa would pay the millions of dollars in fees that Televisa still owes SintecMedia.  But Televisa has refused to pay SintecMedia the remaining fees owed for design, implementation, and testing of the customized *OnAir* system, the License fee, and any portion of the five-year Maintenance and Support Agreement.

### FIRST CAUSE OF ACTION
### *(Breach of Contract)*

74.    SintecMedia repeats and realleges the foregoing paragraphs 1-73 as if fully set forth herein.

75.    Televisa had a duty to comply with its contractual commitments embodied in the Agreement, as amended.

76.    Televisa breached the Agreement in numerous material ways, including but not limited to, the following:

    a.  by wrongfully terminating the Agreement in violation of at least Section 8.3 of the Agreement;

    b.  by failing to have sufficiently prepared and knowledgeable personnel to perform Televisa's obligations and responsibilities to implement the OnAir system according to the Implementation Plan in the Agreement, in violation of at least Section 2.11 of the Agreement;

    c.  by failing to provide the necessary information, documents and resources required to implement the *OnAir* system according to the Implementation Plan in the Agreement, in violation of at least Section 2.11 of the Agreement;

    d.  by failing to cooperate in the performance of the Agreement, and to carry out its roles and responsibilities in a timely and professional manner, in violation of at least Section 2.11 of the Agreement;

    e.  by denying SintecMedia access to the production server, on-site facilities, and Televisa users, thereby obstructing SintecMedia's ability to investigate alleged performance issues raised by Televisa in violation of at least Section 2.11 of the Agreement;

    f.  by unreasonably insisting on unnecessary and un-bargained for Change Requests in violation of at least Section 2.11 of the Agreement;

    g.  by inducing SintecMedia into investing additional manpower, money, time, and other resources into the project to accommodate Televisa's unanticipated requests to expand the scope of the project, and then unilaterally abandoning the project and failing to pay the fees owed to SintecMedia in violation of at least Sections 2.11 and 8.3 of the Agreement;

    h.  by failing to make payments in accordance with at least Section 3 and Annex 1 of the Agreement; and

      i.   by failing to pay for additional Change Requests, project management services, support services, and other work beyond that covered by the Project Fee Schedule in violation of at least Section 3.1 and Annex 2.

77.    Televisa's actions in unilaterally and unlawfully walking away from the project, wrongfully terminating the Agreement, obstructing and interfering with SintecMedia's performance, and failing to pay fees due SintecMedia were deliberate, calculated, and willful.

78.    SintecMedia performed, or stood ready to perform, all of its obligations under the Agreement, as amended.  SintecMedia did not commit any material breach that would permit Televisa to terminate the Agreement.

79.    As a result of Televisa's wrongful termination and material breaches of the Agreement, SintecMedia has been deprived of the full benefit of its bargain, and suffered substantial damages in the amount of the net License, Project Fees, and Annual Support & Maintenance Fees it would have received had Televisa performed, plus additional fees for project support and change requests beyond the scope.  Such damages are in an amount to be proved at trial, but are believed to exceed $13.5 million.

**SECOND CAUSE OF ACTION**
*(Breach of Implied Duty of Good Faith and Fair Dealing)*
*(In the Alternative)*

80.    SintecMedia repeats and realleges the foregoing paragraphs 1-79 as if fully set forth herein.

81.    If Televisa's wrongful termination of the Agreement and other breaches of the Agreement set forth above are, in whole or in part, not deemed to be direct breaches of the Agreement, then, alternatively, such actions are breaches of the implied duty of good faith and fair dealing Televisa owed SintecMedia.

82.      Televisa owes SintecMedia an implied duty of good faith and fair dealing pursuant to which Televisa shall not do anything which has the effect of destroying or injuring the right of SintecMedia to receive the fruits of the contract.

83.      Televisa was aware that SintecMedia provided a deep discount on implementation and licensing costs in exchange for the establishment of a strategic partnership between Televisa and SintecMedia, including a lucrative maintenance and support relationship.

84.      Televisa induced SintecMedia to devote extensive personnel and other resources to the implementation and integration of the software, and the many unanticipated enhancements and Change Requests beyond the original scope of the project that Televisa demanded. SintecMedia reasonably relied on Televisa's promises of future performance and payment to incur increased costs to meet Televisa's demands.

85.      While Televisa encouraged SintecMedia to invest resources into the project, Televisa set about a course of conduct designed to destroy SintecMedia's ability to receive the benefits of the bargain.

86.      Among other actions, Televisa interfered with SintecMedia's ability to perform its obligations under the contract by repeatedly expanding and changing project scope, and issuing hundreds of Change Requests over the course of the project.  The Agreement, as amended, required SintecMedia to design, develop, and implement its *OnAir* software pursuant to a schedule agreed to by the parties.  Televisa's unanticipated scope expansion and Change Requests, however, substantially increased the original scope of the agreed project, yet Televisa demanded that this work be addressed simultaneously with the remainder of the project development, fully understanding that the timeline would be delayed.

24

87.     SintecMedia repeatedly advised Televisa that the implementation of new project scope and Change Requests would delay development of the software and necessitate revised timelines, as SintecMedia addressed both the Change Requests and the contracted for enhancements simultaneously to best meet Televisa's professed needs.

88.     SintecMedia also requested that Televisa agree not to pursue certain Change Requests or delay the implementation of certain Change Requests, given the complexity of many of the Change Requests, the extensive design and development work required to implement many of those Change Requests, and the obvious impact on the overall schedule.  Televisa repeatedly rejected these requests and insisted that the Change Requests were essential and could not be withdrawn or delayed.

89.     By issuing the Change Requests and arbitrarily refusing to allow sufficient time for SintecMedia to address the Change Requests and simultaneously perform the original scope of contracted work pursuant to the revised timelines, Televisa in bad faith subverted the purpose of the Agreement, as amended.  In doing so, Televisa deprived SintecMedia of the benefits of the Agreement.

90.     Televisa also deliberately and in bad faith withdrew its commitment and resources to the *OnAir* project in 2017 and left SintecMedia to implement the project without the appropriate support and collaboration from Televisa.  Instead of cooperating as required, Televisa actively obstructed and interfered with SintecMedia's performance by denying SintecMedia access to the production server, on-site facilities, and Televisa users; and instructing Televisa users not to respond to SintecMedia production support.  Televisa's willful, deliberate, and bad faith refusal to cooperate and obstruction led to delays in the project and substantially complicated the project.  Importantly, instead of Televisa acknowledging that its lack of

25

commitment, internal reorganization, and changed corporate priorities were impacting the *OnAir* project, Televisa tried to shift blame to SintecMedia.

91.     Televisa then, in bad faith, unilaterally and wrongfully terminated the Agreement.

92.     As a result of Televisa's breaches, SintecMedia has been deprived of the full benefit of its bargain, and thus SintecMedia is entitled to the net revenues it would have received had Televisa performed, plus the Annual Support & Maintenance Fees, plus the costs incurred from the additional Change Requests issued by Televisa.

### THIRD CAUSE OF ACTION
### *(Unjust Enrichment)*
### *(In the Alternative)*

93.     SintecMedia repeats and realleges the foregoing paragraphs 1-92 as if fully set forth herein.

94.     Subsequent to the Third Addendum, Televisa continued to expand the project scope and delay the implementation schedule.  The expanded scope and delays required SintecMedia to devote substantial additional man-hours to the project, including for project management and support services.

95.     These additional project management and support services were for and to the benefit of Televisa.

96.     The value of SintecMedia's additional project management and support services for and to the benefit of Televisa is at least $2.3 million.

97.     In December 2016, Televisa also demanded that SintecMedia progress more than one hundred Change Requests for Pay TV & Multiplatform Enhancements and Interfaces that were outside the scope of work covered by the License and Project Fees.

98.     SintecMedia informed Televisa that, after a 5% discount, these additional Change Requests would cost $1,147,609.50 above and beyond any other project, license, and maintenance fees due under the parties' Agreement.  SintecMedia provided the following summary of the costs for the Change Requests by Area:

| CR Area | Cost |
|---|---|
| Sales Adm | $ 43,740.00 |
| Canales | $ 56,700.00 |
| Sales | $ 217,260.00 |
| IT Req | $ 171,660.00 |
| Programming | $ 105,270.00 |
| Traffic | $ 354,840.00 |
| Div Film | $ 166,080.00 |
| Promotion | $ 92,460.00 |
| **TOTAL** | **$ 1,208,010.00** |
| 5% Discount | $ 60,400.50 |
| **Final Cost 97 CR's** | **$ 1,147,609.50** |

99.     SintecMedia completed all of the IT Req. Change Requests.  The cost for those Change Requests is $171,660.  At the time Televisa improperly and unlawfully terminated the parties' Agreement,  SintecMedia had finished the design work for the remaining changes, which represents at least 30% of the costs for those changes, or $310,905.

100.    SintecMedia's work on the Change Requests was for and to Televisa's benefit. Televisa insisted that SintecMedia perform this work.

101.    The benefit to Televisa from SintecMedia's additional project management and support services and the Change Requests for Pay TV & Multiplatform Enhancements and Interfaces has been at SintecMedia's expense, as Televisa has not compensated SintecMedia for this work.

102.    Televisa's retention of this benefit under the circumstances would be unjust, and equity and good conscience demands restitution to SintecMedia.

103.    If Televisa's wrongful termination of the Agreement or failure to pay for SintecMedia's additional project management and support services and the Pay TV & Multiplatform Enhancements and Interfaces Change Requests is not deemed a breach of the Agreement or a breach of the implied duty of good faith, then SintecMedia is alternatively entitled to the value of these services, at least $2.3 million for the additional project management and support services and $482,565 for the Change Requests for Pay TV & Multiplatform Enhancements and Interfaces.

### FOURTH CAUSE OF ACTION
#### *(Quantum Meruit)*
#### *(In the Alternative)*

104.    SintecMedia repeats and realleges the foregoing paragraphs 1-103 as if fully set forth herein.

105.    SintecMedia provided Televisa with additional project management and support services to meet the expanded scope demanded by Televisa and the extended timeline resulting from Televisa's delays.  SintecMedia performed these services with the expectation that it would be paid.  Televisa accepted these services and knew that SintecMedia expected to be paid for these services. The reasonable value of these services exceeds $2.3 million.

106.    SintecMedia also in good faith designed, developed, and implemented the work specified in the Pay TV & Multiplatform Enhancements and Interfaces Change Requests demanded by Televisa.  SintecMedia performed the Change Requests with the expectation that it would be paid.  Televisa insisted upon and accepted these services and knew that SintecMedia expected to be paid for these services.  The reasonable value of the work on these Change Requests amounted to at least $482,565.

107.    Televisa improperly terminated the Agreement and has not compensated SintecMedia for the additional project management and support services or the Pay TV & Multiplatform Enhancements and Interfaces Change Requests.

108.    If Televisa's wrongful termination of the Agreement or failure to pay for these services is not deemed a breach of the Agreement or a breach of the implied duty of good faith, then SintecMedia is alternatively entitled to the reasonable value of the additional project management and support services provided, at least $2.3 million, and the Pay TV & Multiplatform Enhancements and Interfaces Change Requests, at least $482,565.

**WHEREFORE**, SintecMedia demands judgment against Televisa awarding SintecMedia:

A.    Compensatory damages in an amount to be determined at trial;

B.    Pre- and post-judgment interest at the statutory rate of 9% annually;

C.    SintecMedia's costs of suit; and

D.    Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, SintecMedia demands trial by jury in this action of all issues so triable.

Dated:   New York, New York                    DENTONS US LLP
         June 29, 2018

                                               By: /s/ Anthony B. Ullman
                                               Anthony B. Ullman
                                               1221 Ave of the Americas
                                               New York, NY 10020
                                               Telephone: (212) 632-8342
                                               Facsimile:  (212) 768-6800

                                               Email: anthony.ullman@dentons.com

                                               John W. Lomas, Jr.
                                               john.lomas@dentons.com
                                               Eric Wu
                                               eric.wu@dentons.com
                                               1900 K Street NW
                                               Washington, DC 20006
                                               Telephone: (202) 496-7183
                                               Facsimile: (202) 496-7756
                                               (*pro hac vice* applications forthcoming)

                                               *Counsel for Plaintiff SintecMedia, Inc.*